UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUIS MUNUZURI HARRIS,

       Plaintiff,

v.                                                    Case No. 3:22-cv-449-MMH-LLL

ROSEANNA SINGLETARY, et al.,

       Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Luis Munuzuri Harris, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on April 15, 2022, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[1] with exhibits (Doc. 1-1) under 42 U.S.C. § 1983. In the Complaint, Harris names the following Defendants: Nurse Roseanna Singletary; Sergeant Allen; Sergeant Brewington; Captain J. Bieghsly; Captain Starling; Warden Barry Reddish; and Inspector Donaldson. He alleges claims of retaliation against all Defendants and excessive force against Nurse Singletary, Sergeant Allen, and Sergeant Brewington. Harris seeks injunctive relief and monetary damages.

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

This matter is before the Court on the following Motions: (1) Defendants Reddish, Bieghsly, Starling, and Donaldson's Motion to Dismiss (Reddish Motion; Doc. 16) (collectively referred to as the Reddish Defendants); and (2) Defendant Nurse Singletary's Motion to Dismiss (Singletary Motion; Doc. 28).[2] Harris filed Responses. See Reddish Response (Doc. 24); Singletary Response (Doc. 30). Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[3]

As to the specific underlying facts supporting his claims, Harris asserts that on January 5, 2020, he was called to medical, and when he arrived in the "triage room," Nurse Singletary confronted him using "irate profane language." Complaint at 8. According to Harris, Nurse Singletary said, "She ain't the one to be [messed] with," called Harris a rapist, and used a racial slur. Id. Harris maintains she began to attack him by "clawing and grabbing at [his right] arm, repeatedly violently striking [him] in [the] face with severe force causing [him] to go down." Id. He alleges Nurse Ford stopped Nurse Singletary's assault, and

---

[2] Defendants Allen and Brewington filed a joint Answer. See Doc. 17.

[3] In considering the Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Harris, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

2

Nurse Brooker said, "That's what happens when you [mess] with medical." Id. Harris attempted to leave the room, but the door was locked. Id. Harris asserts that Nurse Singletary then "picked up [the] phone and lied to Captain Duncan to lock [him] up for 'disrespect.'" Id. (emphasis omitted). According to Harris, he sustained bruising, swelling of his head, scratches, and bruises on his torso from the assault. Id. at 6. He contends that Nurse Singletary assaulted him in retaliation for a medical grievance that he filed on December 30, 2019. Id. at 8.

On January 6, 2020, Harris submitted a grievance about Nurse Singletary's attack. Id. at 9. That same day, a correctional officer escorted Harris to medical, so staff could evaluate his injuries. Id. Harris alleges that Nurse Singletary was present for the examination and "taunt[ed]" him about reporting the incident. Id. According to Harris, Nurse Singletary talked about his criminal case and said, "We should rape you like you did that lady." Id. at 9.

Harris asserts that the next day, January 7, 2020, Sergeants Allen and Brewington removed Harris from his cell and escorted him to a hallway of the Administrative Classification Office. Id. at 13-14. He alleges that Sergeant Allen placed him in a chokehold while Sergeant Brewington punched and

kicked him. Id. at 14. After several minutes, Sergeant Brewington then placed Harris in a chokehold while Sergeant Allen punched Harris. Id. According to Harris, Sergeant Allen subsequently took a black "mini-mag" flashlight from his utility belt and forcefully inserted the flashlight into Harris's rectum. Id. Harris asserts Sergeants Allen and Brewington made "racial comments" and referred to his criminal case throughout the incident. Id. He contends the attack occurred "under the retaliatory direction of Defendant Singletary" after Captain Starling allowed Sergeants Allen and Brewington to read the January 5th incident report. Id. at 13, 15.

Harris next contends that Captain Bieghsly prevented him from reporting the January 7th assault. Id. at 19. Harris alleges that on January 15, 2020, Captain Bieghsly "c[a]me to [his] cell [] with a witness statement falsely representing that [Harris] was to give a statement saying that [he] 'had no new allegations.'" Id. at 20. Captain Bieghsly told Harris that Lieutenant Mark Avery had already reported the incident; however, Harris asserts that the incident "was not already reported" because the statement was "suppose[d] to be related to a Direct Grievance . . . regarding physical and sexual abuse suffered on January 07, 2020." Id. Harris further alleges that Inspector Donaldson arrived at Harris's cell to verify his identity on January 30, 2020.

4

Id. at 23. Harris agreed to speak with Inspector Donaldson, who ordered Captain Starling to remove Harris from the cell. Id. Captain Starling directed Harris through a "a 'strip-search' process twice." Id. Although Harris avers that he complied with the procedure, Captain Starling reported that Harris did not do so. Id. According to Harris, Captain Starling told him that he was "not going to talk to anybody," and that "the warden and ICT ain't transferring you . . . you're dead." Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam)

5

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less

6

stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of the Arguments

In her Motion, Nurse Singletary argues that Harris's claims against her should be dismissed because: (1) the Complaint does not include a short and plain statement of the facts as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure (Rule(s)); (2) Harris alleges only de minimis physical injuries which do not entitle him to compensatory and punitive damages under 42 U.S.C. § 1997e(e); (3) he has not plead facts sufficient to state a Fifth Amendment due process claim upon which relief can be granted; (4) he fails to state a First Amendment retaliation claim upon which relief can be granted; (5) he failed to exhaust administrative remedies; and (6) Harris abused the judicial process when he failed to accurately disclose his litigation history.

Singletary Motion at 6-17. In their Motion, the Reddish Defendants argue that Harris's claims against them should be dismissed because he fails to state a First Amendment retaliation claim upon which relief can be granted. See Reddish Motion at 5-6.

In his Responses, Harris asks the Court to deny Defendants' Motions because he states plausible claims against Defendants. Singletary Response at 1-3; Reddish Response at 1-2. He also contends that he exhausted his administrative remedies, and truthfully disclosed his litigation history. Singletary Response at 3-6.

## V. Analysis

### A. Exhaustion of Administrative Remedies

First, Nurse Singletary argues that Harris did not properly exhaust administrative remedies. Singletary Motion at 15. The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir.

2012)[4] (noting that exhaustion is "a 'threshold matter' that must be addressed first") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner such as Harris, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> law does this by requiring proper exhaustion of
> administrative remedies, which "means using all steps
> that the agency holds out, and doing so <u>properly</u> (so
> that the agency addresses the issues on the merits)."
> <u>Pozo</u>.[5] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with

an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not

engraft an unwritten 'special circumstances' exception onto the PLRA's

exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one

baked into its text: An inmate need exhaust only such administrative remedies

as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an

administrative remedy to be available, the "remedy must be 'capable of use for

the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084

(11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th

Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative

defense, Defendant bears "the burden of proving that [Harris] has failed to

exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with

---

[5] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance

11

at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. <u>See</u> Fla. Admin. Code R. 33-103.007. Notably, an inmate may bypass the informal grievance step if he or she raises a grievance of reprisal. <u>See</u> Fla. Admin. Code R. 33.103.006(3)(c). An informal grievance must be received within twenty days of when the action being grieved occurred. <u>See</u> Fla. Admin. Code R. 33-103.11(1)(a). If an informal grievance was not required, then the formal grievance must be received within fifteen days from the date on which the grieved action occurred. <u>See</u> Fla. Admin. Code R. 33-103.11(1)(b).

With the Complaint, Harris provides records of his exhaustion efforts. <u>See</u> Complaint at 8-12. The records reflect that on January 6, 2020, Harris submitted a formal grievance about Nurse Singletary's use of force. <u>Id.</u> at 8. Florida State Prison responded:

> Your request for Administrative Review or Appeal has been received, reviewed and evaluated as follows:
>
> Incident Report #W20-206-0024 was submitted with your allegations of Staff Misconduct as outlined in Chapter 33-208.002 and your fear for your personal safety. This report is being referred to the Office of the Inspector General for review. Upon Completion of all necessary action, information will be provided to appropriate administrators for final determination

12

> and handling. [T]his may or may not result in a personal interview with you. Until this process is completed you will remain in Confinement for your own safety.
>
> As action was initiated, you may consider your Grievance "Approved" from that standpoint. However, this does not constitute substantiation of you[r] allegations.

Id. at 10. Harris appealed, id. at 11, and the Office of the FDOC Secretary denied the appeal, stating in relevant part:

> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

Id. at 12.[6]

In her Motion, Nurse Singletary argues that although Harris filed a grievance on January 6, 2020, complaining about the use of force, the grievance

---

[6] While the face of the Complaint shows that Harris has submitted other grievances, the Court references only the January 6th grievance and appeal because Nurse Singletary relies on it alone to support her argument.

13

did not comply with Florida Administrative Code Rule 33-103.-014(1)(a) because "it addressed multiple topics and issues involving multiple different people, torts, and actions." Complaint at 14-15. She therefore contends that Harris did not exhaust his administrative remedies where he failed to comply with the FDOC's grievance procedure. Id. at 14. Harris responds that he properly exhausted his administrative remedies because the FDOC never rejected his grievance on the basis identified by Nurse Singletary. Singletary Response at 3.

Nurse Singletary's argument is plainly without merit. The Eleventh Circuit has held that a prisoner exhausts his administrative remedies "when prison officials decide a procedurally flawed grievance on the merits . . . [and] district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1215 (11th Cir. 2015). Even assuming Harris's formal grievance and appeal were "procedurally flawed," the FDOC reached the merits of Harris's grievances and declined to enforce the procedural bar identified by Nurse Singletary. The Court will not enforce the FDOC's procedural bar on its behalf. Therefore, Nurse Singletary's Motion is

14

due to be denied as to her assertion that Harris failed to properly exhaust administrative remedies.

## B. Short and Plain Statement

Nurse Singletary asks the Court to dismiss Harris's Complaint because it "does not come anywhere close to a 'short and plain' statement of a claim showing that [Harris] is entitled to relief against Nurse Singletary as required by Rule 8(a)(2)." Singletary Motion at 6. She contends that the Complaint amounts to "a series of administrative complaints" without any well-plead facts connecting her to Harris's injuries or any subsequent acts of violence. Id. at 6-7. In response, Harris argues that he provided a "synopsis of claims" that incorporated the factual basis from his grievances "in the interest of judicial economy." Singletary Response at 30. He maintains that he identified Nurse Singletary as the person responsible for the retaliatory use of force, and alleged specific facts to support the claims against her. Id.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation marks and citation omitted). And, while pro se pleadings are liberally

15

construed, they "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." <u>Jones v. Fla. Parole Comm'n</u>, 787 F.3d 1105, 1107 (11th Cir. 2015).

To the extent Nurse Singletary contends the Complaint does not comply with Rule 8(a)(2) because Harris uses grievance records to set forth the underlying facts of his claim, her argument is unavailing. Harris identifies four separate claims for relief against different Defendants in the Complaint. <u>See generally</u> Complaint. He asserts Claim One against Nurse Singletary, Claim Two against Sergeants Allen and Brewington, Claim Three against Captain Bieghsly, and Claim Four against Warden Reddish, Inspector Donaldson, and Captain Starling. <u>Id.</u> at 7, 13-15, 19, 22. As Claim One, Harris alleges Nurse Singletary violated the First Amendment when she retaliated against him for using the grievance process and violated the Eighth Amendment when she used excessive force. <u>Id.</u> at 7. The purported use of force occurred on January 5, 2020, and as a result, Harris contends he sustained "bruising, swelling to the face/head, scratches and bruising to torso." <u>Id.</u> at 6. To support Claim One, Harris "incorporates by reference . . . the original facts set forth in 'Approved' Grievance Log #2001-206-004" on pages eight through ten of the Complaint.

16

Id. at 7. He labels the relevant grievances as "Claim One." Id. at 8-10. The grievances detail the use of force that he asserts occurred on January 5th and identify Nurse Singletary as the person who used the force. Considering the above, Harris has set forth a short and plain statement of his entitlement to relief such that Nurse Singletary should have fair notice of the claims against her and the facts underlying those claims. The Court thus will evaluate the sufficiency of the factual allegations as set forth in the Complaint and its attachments. See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co., 40 F.4th 1295, 1303 (11th Cir. 2022) (finding district court erred when it refused to consider whether the complaint and an exhibit attached and incorporated by reference, taken together, plausibly stated a claim for relief); Clark v. Huntleigh Corp., 119 F. App'x 666, 667-68 (5th Cir. 2005) (reversing and remanding dismissal for failure to state a claim where pro se plaintiff's complaint "on its face included only hints of claims [and] included no real factual or legal allegations" but attached as an exhibit his "EEOC charge of discrimination, which set out his race and age discrimination allegations). Accordingly, Nurse Singletary's Motion is due to be denied as to her claim that the Complaint fails to comply with Rule 8(a)(2).

## C. Physical Injury

Nurse Singletary next argues that Harris has not plead physical injury sufficient to entitle him to compensatory and punitive damages. Singletary Motion at 10-11. Pursuant to § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert physical injury that is more than de minimis. However, the injury does not need to be significant. See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted). Until recently, the Eleventh Circuit read this statute to mean that "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." Brooks v. Warden, 800 F.3d 1295, 1307-08 (11th Cir. 2015). However, in Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021), the Eleventh Circuit reexamined § 1997e(e)'s physical injury requirement and precisely defined its limitation on the damages a prisoner can recover for constitutional violations. The court held and instructed "the district court to dismiss only a request for compensation for an alleged mental or emotional

18

injury in the absence of an alleged physical injury." <u>Id.</u> at 1361. It reasoned that "a plaintiff – at least one alleging a constitutional violation – need not allege a compensable injury to seek punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious." <u>Id.</u>

Here, the Court finds that Harris pleads sufficient facts to support a claim for compensatory damages under current Eleventh Circuit precedent. In the Complaint, Harris details the injuries that he sustained from the assault: "bruising, swelling to the face/head, scratches[,] and bruising to torso." Complaint at 6. Harris allegedly received "minor medical treatment," and the Office of the Inspector General photographed his injuries. <u>Id.</u> While it appears Harris may have sustained minimal injuries, the Court finds the allegations set forth in the Complaint support a claim for compensatory damages at this juncture.

Harris also requests punitive damages. He asserts that Nurse Singletary used excessive force on January 5th in retaliation for his filing a medical grievance on December 30, 2019. <u>Id.</u> at 7-8. During the assault, Nurse Singletary allegedly stated, "She ain't the one to be [messed] with"; used a racial slur; and referred to Harris as a "rapist." <u>Id.</u> at 8. As such, Harris

19

plausibly alleges that Nurse Singletary's conduct was willful. Therefore, Nurse Singletary's Motion is due to be denied on this ground.

### D. Fifth Amendment Due Process

In her Motion, Nurse Singletary requests dismissal of the Fifth Amendment claim against her because Harris pleads no facts that "connect [her] to any Fifth Amendment constitutional violation." Singletary Motion at 11. Harris did not respond to the argument. See generally Singletary Response. It is unclear why Nurse Singletary makes this argument as Harris only raises claims against her under the First and Eighth Amendments in the Complaint. See Complaint at 7. As such, Nurse Singletary's Motion is due to be denied as moot on this basis.

### E. Abuse of the Judicial Process

Nurse Singletary requests dismissal of the claims against her because Harris failed to fully disclose his litigation history. Singletary Motion at 15. She asserts that, in the Complaint, Harris identified one prior lawsuit involving prison conditions (Case No. 5:13-cv-382-WS-EMT) but "omitted several prior federal lawsuits involving prison conditions." Id. at 16. Moreover, Nurse Singletary contends that "[Harris's] own Complaint indicates that he

filed a writ of habeas corpus in the First District Court of Appeals related to prison conditions (alleged retaliation and sexual assault)." Id.

Harris responds that he disclosed only case number 5:13-cv-382-WS-EMT because he reached a settlement with the defendants in that case such that he would dismiss two other federal civil rights cases arising from the same facts. Response at 5. Harris explains that "the complaint [in that case] became the 'operative pleading," which was resolved through financial settlement in favor of [Harris], and in turn, [he] voluntarily dismissed the two other civil rights complaints." Id. He further argues that the state petition for writ of habeas corpus did not concern retaliation and sexual assault, but rather requested release from close management status. Id.

The PLRA requires courts to dismiss a case at any time if the court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). When a complaint form requires a plaintiff to list his litigation history, and the plaintiff makes affirmative misrepresentations regarding his litigation history under penalty of perjury, those misrepresentations constitute an abuse of the judicial process warranting dismissal of the case as "malicious." 28 U.S.C. § 1915A(b)(1);

Jenkins v. Hutcheson, 708 F. App'x 647, 648-49 (11th Cir. 2018) (per curiam); Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) (holding that dismissal of an action without prejudice as a sanction for a pro se prisoner's failure to disclose the existence of a prior lawsuit, where that prisoner was under penalty of perjury, was proper), abrogated in part on other grounds by Jones v. Bock, 549 U.S. 199 (2007); see also Sears v. Haas, 509 F. App'x 935, 935-36 (11th Cir. 2013) (per curiam) (holding that dismissal of prisoner's case for abuse of the judicial process under 28 U.S.C. § 1915A(b)(1) was warranted where the prisoner failed to disclose cases he previously filed). "It is well settled that federal courts have the inherent power to sanction parties, but the court must make a finding of bad faith on the part of the litigant before imposing such sanctions." Harris v. Warden, 498 F. App'x 962, 964 (11th Cir. 2012).

Here, the Court declines to dismiss Harris's Complaint for abuse of the judicial process. Harris disclosed one federal civil rights case from the United States District Court for the Northern District of Florida. Complaint at 33. He identified the case number, noted that the parties reached a settlement, and stated that "[a] joint notice of voluntary dismissal was filed." Id. He failed to disclose two other federal civil rights cases brought in the Northern District.

However, considering Harris's Response, the omission seemingly arose from ignorance of procedure, rather than bad faith.

Harris also omitted information about his state petition. Yet, it does not appear he did so in an attempt to deceive the Court as he includes as part of his Complaint a letter from the First District Court of Appeal's Clerk of Court about the state petition. Complaint at 18. Based on the pleadings, the Court finds the severe sanction of dismissal with prejudice to be inappropriate. As such, Nurse Singletary's Motion is due to be denied as to her assertion that the Court should dismiss the Complaint under 28 U.S.C. § 1915A(b)(1).

### F. First Amendment Retaliation

Lastly, Nurse Singletary and the Reddish Defendants argue that Harris fails to state a First Amendment retaliation claim upon which relief can be granted. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate may pursue a cause

of action against a prison official who retaliated against him for engaging in that protected speech. Id.

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

Williams v. Radford, 64 F.4th 1185, 1192 (11th Cir. 2023). As to the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted).

24

### 1. Nurse Singletary

In her Motion, Nurse Singletary requests dismissal of Harris's First Amendment claim against her because "there is no evidence that Nurse Singletary violated [Harris's] First Amendment free speech rights, i.e., the right to file grievances." Singletary Motion at 11. She relies on the grievances attached to the Complaint to argue that Harris had access to and used the grievance process. Id. at 11-12. According to Nurse Singletary, Harris therefore fails to state a claim for relief. Id. at 12.

A plain reading of the Complaint demonstrates that Harris does not allege that Nurse Singletary impeded his access to the grievance process, but rather alleges that she used force on January 5th in retaliation for Harris "exercising his right to the grievance procedures." Complaint at 7; see also Singletary Response at 2 ("Plaintiff clearly claimed that, '[the January 5th assault] was a retaliatory response, because [Harris] wrote one medical grievance . . . ."). Harris asserts that he submitted a "medical grievance" on December 30, 2019, and his family filed a complaint with the Office of the Inspector General. Id. at 8 (emphasis added). According to Harris, on January 5, 2020, Nurse Singletary "confronted" him in medical, saying she "ain't the one to be [messed] with," and hit him. Id. He maintains that another nurse

25

who witnessed the assault, stated, "That's what happens when you [mess] with medical." Id. Based on the above, the Court finds Harris raises a plausible claim of First Amendment retaliation against Nurse Singletary for his exercise of the right to utilize the grievance process on December 30th. Accordingly, Nurse Singletary's Motion is due to be denied as to this claim.

### 2. Reddish Defendants

In their Motion, the Reddish Defendants assert that "there is no constitutional right to the grievance procedure under the Federal Constitution." Reddish Motion at 5. Therefore, they allege that Harris fails to state a claim of constitutional proportion to the extent he asserts that the Reddish Defendants prevented him from accessing the grievance process. Id. The Reddish Defendants also argue that because Harris never engaged in constitutionally protected speech, he cannot maintain a cause of action for retaliation. Id. at 6.

A prisoner can establish retaliation when he demonstrates prison officials' actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) Here, the basis of Harris's claims against the Reddish Defendants is that they "thwart[ed] [him] from exercising the grievance

26

process." See Complaint at 19, 22 (emphasis added). Harris has failed to allege that the Reddish Defendants' actions were taken in retaliation for filing grievances, and, as such, he cannot state a claim for relief.

Nevertheless, even assuming Harris alleged that he engaged in protected speech when he filed grievances concerning the January 5th and 7th assaults, he fails to allege the requisite causal connection between those grievances and the Reddish Defendants' actions. He provides no well-plead facts, beyond mere supposition, to plausibly support his conclusion that the Reddish Defendants had retaliatory motives. Rather, according to the allegations in the Complaint and the incorporated grievances, the Reddish Defendants did not participate in the January 5th or January 7th assaults involving Nurse Singletary, Sergeant Allen, and Sergeant Brewington, nor were they the subject of grievances regarding those assaults. Harris does not allege any facts that would suggest the Reddish Defendants had a subjective motive to retaliate against him for filing grievances or reporting the assaults by Nurse Singletary, Sergeant Allen, and Sergeant Brewington. See Thomas v. Lawrence, 421 F. App'x 926, 929 (11th Cir. 2011) (affirming dismissal of prisoner's retaliation claim where grievance complained about only one staff member and "his complaint failed to allege any facts that would suggest that

27

any of the other named defendants had a reason to retaliate against him for filing the grievance against [the named staff member]."). Accordingly, Harris fails to plead facts sufficient to nudge his claim of retaliation "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

In addition, "an inmate has no constitutionally-protected liberty interest in access to [the grievance] procedure." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1177 (11th Cir. 2011). To the extent Harris asserts a due process claim against the Reddish Defendants based on his inability to access the grievance procedure or contends that he has a constitutional interest in a particular outcome of the grievance process, he fails to state a claim for relief. Therefore, the Reddish Defendants' Motion is due to be granted, and the claims against them dismissed.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    Defendants Reddish, Bieghsly, Starling, and Donaldson's Motion to Dismiss (Doc. 16) is **GRANTED**.

2.    Harris's claims against Defendants Reddish, Bieghsly, Starling, and Donaldson are **DISMISSED without prejudice**. The Court **directs the Clerk** to terminate them as Defendants in the case.

3.      Defendant Nurse Singletary's Motion to Dismiss (Doc. 28) is

**DENIED**.

4.      Nurse Singletary shall respond to the Complaint (Doc. 1) **no later**

**than July 31, 2023**. Upon the filing of her answer, the Court, by separate

Order, will set deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of

July, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 6/21
c:     Luis Munuzuri Harris, #V09696
        Counsel of record

29