UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUIS MUNUZURI HARRIS,

      Plaintiff,

v.                                Case No. 3:22-cv-449-MMH-LLL

ROSEANNA SINGLETARY, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Luis Munuzuri Harris, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on April 15, 2022, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[1] under 42 U.S.C. § 1983 with exhibits (Doc. 1-1). In the Complaint, Harris names the following Defendants: (1) Nurse Roseanna Singletary, (2) Sergeant Allen, and (3) Sergeant Brewington.[2] Complaint at 2–3. He alleges claims of excessive force and retaliation against Defendants. Id. at 7–18. As relief,

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] The Court previously dismissed the claims against Captain J. Bieghsly, Captain Starling, Warden Barry Reddish, and Inspector Donaldson. See Order (Doc. 36).

Harris asks for monetary damages, as well as for "the Florida Department of Corrections to enter special-review status in order to prohibit [his] future housing with Regions One and Two." <u>Id.</u> at 6.

This matter is before the Court on Nurse Singletary's Motion for Summary Judgment (Singletary Motion; Doc. 57) and Sergeants Allen and Brewington's Motion for Summary Judgment (FDOC Motion; Doc. 69). Defendants submitted exhibits in support of their respective Motions. <u>See</u> Docs. 57-1 through 57-20; 69-1. The Court advised Harris of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motions. <u>See</u> Order (Doc. 6); Summary Judgment Notice (Doc. 59). In opposition to the Motion, Harris filed responses with exhibits. <u>See</u> Singletary Response (Doc. 65); Docs. 65-1 through 65-3; FDOC Response (Doc. 82). As such, Defendants' Motions are ripe for review.

## II. Harris's Allegations[3]

Harris asserts that on January 5, 2020, at 9:00 a.m., he was called to medical, and when he arrived in the "triage room," Nurse Singletary confronted him using "irate profane language." Complaint at 8. According to Harris, Nurse Singletary said, "She ain't the one to be f[**]ked with," called Harris a rapist, and used a racial slur. Id. Harris maintains Nurse Singletary began to attack him by "clawing and grabbing at [his right] arm, repeatedly violently striking [him] in [the right side of his] face with severe force causing [him] to go down." Id. Nurse Ford stopped Nurse Singletary's assault, and Nurse Brooker said, "That's what happens when you [mess] with medical." Id. Harris maintains Sergeant Sellers did not witness the assault because "he went back by the infirmary." Id.

Harris attempted to leave the room, but the door was locked. Id. Harris asserts that Nurse Singletary then "picked up [the] phone and lied to Captain Duncan to lock [him] up for 'disrespect.'" Id. (emphasis omitted). According to Harris, he sustained bruising, swelling of his head, scratches, and bruises on his torso from the assault. Id. at 6. He contends that Nurse Singletary assaulted him in retaliation for a medical grievance that he filed on December

---

[3] The recited facts are drawn from the Complaint.

30, 2019, and an "on-line complaint" from his family to the Office of the Inspector General. Id. at 8.

On January 6, 2020, Harris submitted a grievance about Nurse Singletary's assault. Id. at 9. That same day, a correctional officer escorted Harris to medical, so staff could evaluate his injuries. Id. Harris alleges that Nurse Singletary was present for the examination and "taunt[ed]" him about reporting the incident. Id. According to Harris, Nurse Singletary talked about his criminal case and said, "We should rape you like you did that lady." Id. at 9.

Harris asserts that on the next day, January 7, 2020, at approximately 8:30 p.m., Sergeants Allen and Brewington escorted him to a hallway of the Administrative Classification Office. Id. at 13–14. He alleges that Sergeant Allen placed him in a chokehold while Sergeant Brewington punched and kicked him. Id. at 14. After several minutes, Sergeant Brewington then placed Harris in a chokehold while Sergeant Allen punched Harris. Id. According to Harris, Sergeant Allen took a black "mini-mag" flashlight from his utility belt and forcefully inserted the flashlight into Harris's rectum. Id. Harris asserts Sergeants Allen and Brewington made "racial comments" and referred to his criminal case throughout the incident. Id. He contends the assault occurred "under the retaliatory direction of Defendant Singletary" after Captain

4

Starling allowed Sergeants Allen and Brewington to read the January 5th incident report. Id. at 13, 15. Harris alleges that from the assault, he sustained multiple head contusions; bleeding from his nose, mouth, and rectum; bruises on his neck and torso; "laceration to [his] anus cavity with internal bleeding"; and "mental health complications." Id. at 6. Based on the above, Harris raises Eighth Amendment excessive force and First Amendment retaliation claims against Nurse Singletary, Sergeant Allen, and Sergeant Brewington. Id. at 7, 13.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[4] An

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no

---

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

   In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." <u>Guevara v. NCL (Bahamas) Ltd.</u>, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## IV. Summary of the Arguments

In her Motion, Nurse Singletary argues that the Court should grant summary judgment in her favor as to Harris's Eighth Amendment and First Amendment claims against her. <u>See</u> Singletary Motion at 11–16. She contends that her declaration in conjunction with Harris's medical records demonstrate that the alleged January 5th assault did not occur. <u>See</u> <u>id.</u> Nurse Singletary also argues that the Court should dismiss Harris's Complaint as a sanction for his failure to fully disclose his litigation history. <u>See</u> <u>id.</u> at 16–18. In his Response, Harris maintains genuine issues of material fact exist that preclude summary judgment in Nurse Singletary's favor as to his Eighth Amendment and First Amendment claims against her. <u>See</u> Singletary Response at 8–9. He further argues that although he omitted some of his prior cases from his litigation history, he did not do so in bad faith. <u>See</u> <u>id.</u> at 10–11.

In the FDOC Motion, Sergeants Allen and Brewington (collectively FDOC Defendants) ask the Court to grant summary judgment in their favor on Harris's Eighth Amendment claim against them. <u>See</u> FDOC Motion at 7–8. They argue that their declarations in conjunction with housing and medical records show that the alleged January 7th assault did not occur. <u>See</u> <u>id.</u> The

8

FDOC Defendants also contend that Harris is entitled to neither compensatory nor punitive damages. See id. at 8–18. Harris responds that he is entitled to monetary damages and that genuine issues of material fact preclude entry of summary judgment. See FDOC Response at 3–7.

## V. Applicable Law

### A. Eighth Amendment Excessive Force

In Sconiers v. Lockhart, 946 F.3d 1256, 1265 (11th Cir. 2020), the Eleventh Circuit reviewed "the principles applicable to Eighth Amendment excessive-force" claims. In doing so, the Court instructed:

> The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." Hudson v. McMillian, 503 U.S. 1, 5, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain" differs based on the type of Eighth Amendment violation alleged. Id.

> Since [the plaintiff] asserts excessive-force . . . claims, "the core judicial inquiry" requires [the Court] to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37, 130 S.Ct. 1175 (citation and quotation marks

omitted).[5] This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8, 112 S.Ct. 995 (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).

As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," Hudson, 503 U.S. at 8, 112 S.Ct. 995, or "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L.Ed.2d 271 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37, 130 S. Ct. 1175. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37–38, 130 S. Ct. 1175. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly

---

[5] Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam)

10

> have been thought necessary." <u>Wilkins</u>, 559 U.S. at 37,
> 130 S.Ct. 1175 (citation and internal quotation marks
> omitted).

<u>Id.</u> at 1265–66; <u>see also</u> <u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905 (11th Cir.

2013) (per curiam). In determining whether an officer's use of force was applied

maliciously and sadistically for the purpose of causing harm, courts consider

five distinct factors:

> (1) the extent of injury; (2) the need for application of
> force; (3) the relationship between that need and the
> amount of force used; (4) any efforts made to temper
> the severity of a forceful response; and (5) the extent
> of the threat to the safety of staff and inmates, as
> reasonably perceived by the responsible officials on the
> basis of facts known to them.

<u>Campbell v. Sikes</u>, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting <u>Whitley v.</u>

<u>Albers</u>, 475 U.S. 312, 321 (1986); <u>Hudson</u>, 503 U.S. at 7). When considering

these factors, courts "must also give a 'wide range of deference to prison

officials acting to preserve discipline and security,' including when considering

'[d]ecisions made at the scene of a disturbance.'" <u>Cockrell v. Sparks</u>, 510 F.3d

1307, 1311 (11th Cir. 2007) (quoting <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533

(11th Cir. 1990)).

Notably, a lack of serious injury, while not dispositive, is relevant to the

inquiry. <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 38 (2010) (per curiam); <u>Smith v. Sec'y,</u>

11

Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam). The United

States Supreme Court has explained:

> "[T]he extent of injury suffered by an inmate is one
> factor that may suggest 'whether the use of force could
> plausibly have been thought necessary' in a particular
> situation." Ibid.[6] (quoting Whitley, supra, at 321, 106
> S.Ct. 1078). The extent of injury may also provide
> some indication of the amount of force applied. . . . An
> inmate who complains of a '"push or shove"' that
> causes no discernible injury almost certainly fails to
> state a valid excessive force claim. Id. at 9 (quoting
> Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.
> 1973)).[7]
>
> Injury and force, however, are only imperfectly
> correlated, and it is the latter that ultimately counts.
> An inmate who is gratuitously beaten by guards does
> not lose his ability to pursue an excessive force claim
> merely because he has the good fortune to escape
> without serious injury.

Wilkins, 559 U.S. at 37–38. The Eleventh Circuit has explained:

> A plaintiff who suffers only de minimis injury does not
> necessarily lack a claim for excessive force under §
> 1983. Stephens,[8] 852 F.3d at 1328 n.33; Saunders v.
> Duke, 766 F.3d 1262, 1270 (11th Cir. 2014). However,
> the resulting injuries can be evidence of the kind or
> degree of force that was used by the officer. See
> Crocker v. Beatty, 995 F.3d 1232, 1251 (11th Cir.
> 2021).

---

6 Hudson, 503 U.S. at 7.

7 See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later
seem unnecessary in the peace of a judge's chambers, violates a prisoner's
constitutional rights.").

8 Stephens v. DeGiovanni, 852 F.3d 1298 (11th Cir. 2017).

Charles v. Johnson, 18 F.4th 686, 700 (11th Cir. 2021).

## B. First Amendment Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248). An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of [the prisoner] having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (quotation marks omitted).

> [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

Williams v. Radford, 64 F.4th 1185, 1192 (11th Cir. 2023). Notably, there must be a causal relationship between the retaliatory action and the protected

13

speech. For a sufficient causal connection, "the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (citing Mosley, 532 F.3d at 1278). "Once the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant. . . . The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity." Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013) (citing Mosley, 532 F.3d at 1278).

## VI. Analysis[9]

### A. Nurse Singletary Motion

### 1. Eighth Amendment Claim

Harris contends that Nurse Singletary violated his Eighth Amendment right to be free from cruel and unusual punishment when she assaulted him during a medical examination on January 5, 2020. Nurse Singletary contends that she is entitled to summary judgment as to Harris's Eighth Amendment claim against her. In support of her position, Nurse Singletary submits

---

[9] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to Harris. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

14

exhibits, including her own declaration, Doc. 57-1; Harris's medical records,
Docs. 57-2 through 57-6, 57-8 through 57-20; and a disciplinary report, Doc.
57-7.

In her declaration, Nurse Singletary states in pertinent part:

> On January 5, 2020, I was assigned as the Director of
> Nursing ("DON") at Florida State Prison West Unit.
>
> On January 5, 2020, at approximately 9:20 AM, I was
> present in the triage room for a medical assessment of
> Mr. Munuzuri Harris.
>
> Mr. Munuzuri refused an assessment.
>
> I told him that he had a 7:00 AM callout call for
> medical scheduled the next day, on January 6, 2020.
>
> At this point, Mr. Munuzuri Harris stood up, was
> angry, raised his voice, and said: "I'm not f[**]king
> coming up here for no callout."
>
> Mr. Munuzuri Harris was asked to sit down. He
> refused, and prison security staff placed Mr. Munuzuri
> Harris in hand restraints so he could have a pre-
> confinement physical by the on duty medical staff.
>
> The medical assessment was taking place because Mr.
> Munuzuri Harris was apparently going to be placed in
> administrative confinement pending a disciplinary
> team decision. I am not part of that administrative
> process.
>
> On January 5, 2020, at 10:45 AM, I authored a report
> summarizing the developments above. . . . I was asked
> by the shift supervisor to prepare this report and did
> so.

15

I have had an opportunity to review Mr. Munuzuri Harris's Complaint, the grievances, and other records attached to it.

I dispute all of Mr. Munuzuri Harris's allegations against me.
. . . .

At no point did I address Mr. Munuzuri Harris with "irate profane language."
I never told Mr. Munuzuri Harris that I "ain't the one to be [messed]."

I never called Mr. Munuzuri Harris a rapist.

I never used a racial slur to refer to Mr. Munuzuri Harris.

I never attacked, struck, clawed, violently struck, or grabbed Mr. Munuzuri Harris on January 5, 2020. I never caused him to "go down."

I did not lie to Captain Duncan over the phone about my interactions with Mr. Munuzuri Harris on January 5, 2020, and never conspired to have Mr. Munuzuri Harris locked up.

Regarding Mr. Munuzuri Harris's claim that Sgt. Sellers was not present for the alleged battery on January 5th outlined in the Complaint, this is not true. When patients like Mr. Munuzuri Harris present to the clinic there is an officer assigned at all times. Nurses are not isolated from prison security. The type of attack that Mr. Munuzuri Harris describes in his Complaint would not be possible given the presence of prison security guards.

16

I did not assault, batter, or strike Mr. Munuzuri Harris on January 5, 2020, or at any time, in retaliation for filing medical grievances.

I never retaliated against Mr. Munuzuri Harris because he filed grievances.

I treated Mr. Munuzuri Harris with dignity and respect as I do all of my patients.

I understand that Mr. Munuzuri Harris submitted a grievance on January 7, 2020 where he made additional allegations about me regarding his assessment by medical staff on January 6, 2020. I deny the allegations in those grievances as well, many of which I find very offensive.

Regarding the January 6, 2020 medical assessment referenced in Mr. Munuzuri Harris's grievance, I did not taunt Mr. Munuzuri Harris about him reporting the January 5, 2020 alleged incident or otherwise behave unprofessionally, I never mentioned Mr. Munuzuri Harris's criminal case. I never told Mr. Munuzuri Harris that "we should rape you like you did that lady" or utter a racial slur. I did not violate HIPAA regulations.

I also refute the highly inappropriate allegations that I maintained a "sexually fraternizing relationship" with members of the prison security staff.

I also did not instruct other nurses to falsify Mr. Munuzuri Harris's blood pressure readings during a medical assessment on January 6, 2020 so that "a hypertension and TIA crisis protocol would not have to be done." That is grossly inappropriate and something I would never do.

17

Doc. 57-1 at 1–4 (enumeration and citations omitted). The disciplinary report, authored by Nurse Singletary on January 5, 2020, at 10:45 a.m., repeats the above assertions regarding her interaction with Harris. Doc. 57-7 at 1.

Relying on Harris's medical records, Nurse Singletary asserts that medical assessed Harris on multiple occasions between January 5, 2020, and January 17, 2020; however, these assessments failed to identify the "very serious injuries" alleged in the Complaint. Singletary Motion at 13. Of note, the medical records show Nurse G. Ford attempted to assess Harris for the hypertension protocol on January 5, 2020, at 9:00 a.m., but he refused to follow the medical plan. Doc. 57-3. On that same day, at 9:13 a.m., Nurse Ford conducted a pre-special housing health evaluation. Doc. 57-4. Nurse Ford then assessed Harris for injuries due to an "occurrence" at 9:13 a.m., but she did not note any injuries. Doc. 57-5.

Medical assessed Harris again on January 6, 2020, at 9:45 a.m. for injuries from an "occurrence" on January 5, 2020, between 9:00 a.m. and 10:00 a.m. Doc. 57-6. Nurse L. Hankerson identified "superficial scratches" on Harris's right upper arm, as well as a "red area to right side of cheek [that] appears to be a pimple thats [sic] been squeezed." Id.

To defeat the Motion, Harris is required to present evidence to show that there is a genuine issue for trial. Harris argues that Nurse Singletary is not

entitled to summary judgment. In support of his contention, he submits his own declaration, Doc. 65-3 at 2–4; an FDOC Incident Report, id. at 5; and two photographs, id. at 6–7.

In his declaration, Harris provides a factual account similar to the account set forth in his Complaint. He states:

> I certify that Defendant Singletary did retaliate against me for filing a medical grievance against her on 12/30/2019 and for my family filing an on-line complaint to the Office of Inspector General. To retaliate, Defendant Singletary used excessive force by luring me into a medical triage room under the false pretense of a medical evaluation and violently attacking me by clawing and grabbing at my arm and repeatedly striking me in the face with severe force to knock me to the ground. Nurse Ford, whom was present in the entrance door, had to physically stop Defendant Singletary's attack on me. Defendant Singletary did take advantage of the fact that the security officer (Sgt. Sellers), assigned to the medical area, was doing a security round in the back near infirmary. To cover up her retaliation and excessive use of force, Defendant Singletary, then called Captain Duncan and fabricated a false disciplinary report against me.

Doc. 65-3 at 2–3 (citations omitted). He further declares under penalty of perjury that all facts and statements in his Complaint "are true and correct." Id. at 2.

Harris also provides an FDOC Incident Report (Report) about the alleged assault on January 5, 2020. Id. at 5. Heather Regar, a data entry operator, initiated the Report on January 6, 2020. She detailed the following:

> At approximately 8:03 am on January 6[] 2020 while assigned as the Data Entry Operator at Florida State Prison West Unit, I was making my rounds as part of my assigned duties as the Grievance Coordinator in Y-Dorm. As I was being escorted through the Y1-Side of the Confinement Dorm, I was stopped by an inmate who proceeded to tell me that there was an emergency Grievance in the stack that I had retrieved that states he was assaulted by staff, at which point he then displayed his face and exposed arms and shoulders to me to display an array of red, bruise-like marks across and under both arms and shoulders with smaller marks long [sic] his face and jaw line. I confirmed with him the details of the "assault" were written in his grievances to which he replied "yes." I returned to my desk and immediately began to sort through the grievances that I had received in order to determine who the inmate was and found an Informal Grievance Log # 206-2001-0006 and a Formal Grievance Log # 2001-206-004.

Id. Captain Brian Starling, the shift supervisor, noted that Nurse Hankerson examined Harris and found that he had superficial scratches on his right upper arm, as well as a red area on his right cheek that appeared to be a squeezed pimple. Id. He referenced a diagram of the injuries and photographs. Id. The shift supervisor wrote that Nurse Singletary denied the allegations. Id. According to Captain Starling, Harris's injuries did not appear to be consistent

with his allegations, but he stated that he would forward the incident report to the Office of the Inspector General for further review. Id. Harris submits two photographs of his injuries with the Report. Id. at 6–7. He asserts that the photographs were taken on January 6, 2020. Id. at 3.

Here, the parties agree that Nurse Singletary was present for a medical evaluation of Harris on the morning of January 5, 2020. However, since Harris and Nurse Singletary have submitted declarations that plainly contradict each other's assertions with respect to whether Nurse Singletary assaulted Harris, the Court will deny Nurse Singletary's Motion with respect to Harris's claim of excessive force against her. In reviewing a motion for summary judgment, "[i]f there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." Allen v. Board of Public Educ. for Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007) (citing Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003)). If Harris's evidence is to be believed, there was no need to apply any force and Nurse Singletary assaulted him "maliciously and sadistically for the very purpose of causing harm." Cockrell, 510 F.3d at 1311 (quoting Whitley, 475 U.S. at 320–21).

Nevertheless, in support of her request for entry of summary judgment, Nurse Singletary points to the absence of injuries noted in the medical records.

21

Indeed, the day after the incident, Nurse Hankerson did not note any bruising or other injuries during her evaluation of Harris. However, "[a] reasonable jury could believe that [Harris] suffered more injuries than the nurse recorded," see Sears v. Roberts, 922 F.3d 1199, 1208 n.4 (11th Cir. 2019), especially where on that same day, another prison official observed "an array of bruise-like marks across and under both [Harris's] arms and shoulders with smaller marks long his face and jaw line," Doc. 65-3 at 5. Moreover, the medical records provided by Nurse Singletary do not establish the extent of the medical examinations following January 5, 2020, or otherwise directly refute Harris's allegations.[10] See Docs. 57-8 through 57-20.

At this stage, Nurse Singletary asks the Court to weigh the evidence and engage in credibility determinations, which a district court may not do in ruling on a motion for summary judgment. See Sears, 922 F.3d at 1209 (finding the district court erred by weighing the evidence and making its own credibility determinations at the summary judgment stage). Thus, Nurse Singletary's Motion will be denied with respect to Harris's Eighth Amendment claim of

---

[10] While Harris attaches photographs of his injuries, these photographs appear to be dark, low-quality photocopies. As such, they provide little insight into whether Harris sustained injuries.

excessive force because genuine issues of material fact prevent the entry of summary judgment.

### 2. First Amendment Claim

Harris also alleges Nurse Singletary assaulted him on January 5, 2020, in retaliation for a medical grievance that he filed in December 2020. Nurse Singletary asks the Court to grant summary judgment in her favor on this claim because "other than 'general attacks' upon [her] motivations, [Harris] has failed to produce any 'affirmative evidence' of retaliation from which a reasonable jury could find that [he] carried his burden of proving the requisite motive of retaliation on Nurse Singletary's behalf." Singletary Motion at 13. In her declaration, Nurse Singletary denies retaliating against Harris. See Doc. 57-1 at 3.

In response to Nurse Singletary's contentions, Harris states that Nurse Singletary assaulted him on January 5, 2020, because he submitted a medical grievance against her on December 30, 2019, and because his family "fil[ed] an on-line complaint to the Office of the Inspector General." Doc. 65-3 at 1. According to Harris, before the assault, Nurse Singletary said, "She ain't the one to be [messed] with," called Harris a rapist, and used a racial slur.

23

Complaint at 8.[11] Since Harris provides evidence of a causal connection between Nurse Singletary's alleged actions and his grievance and since the retaliation claim against Nurse Singletary is intertwined with the excessive force claim against her, Nurse Singletary's Motion will be denied with respect to the retaliation claim as well.

### 3. Abuse of the Judicial Process

Nurse Singletary also requests dismissal of Harris's Complaint as a sanction for his failure to fully disclose his litigation history.[12] Singletary Motion at 16–18. She asserts that, in total, Harris failed to disclose four Eleventh Circuit cases, seven federal district court cases, and twenty-one state court cases. Id. at 18. Harris responds that "any omission of any litigation history was genuinely inadvertent, not malicious, and arose only from ignorance of procedures and not in bad faith."[13] Singletary Response at 7.

---

[11] In his declaration, Harris states under penalty of perjury that all facts and statements in his Complaint "are true and correct." Doc. 65-3 at 1.

[12] Nurse Singletary previously asked the Court to dismiss Harris's Complaint on this same basis. See Motion to Dismiss (Doc. 28). The Court declined to do so. See Order (Doc. 36) at 20–23.

[13] Harris has also filed a Motion to Take Judicial Notice (Doc. 83). In the Motion, he asks the Court to take judicial notice of the following "facts": Nurse Singletary raised an abuse of the judicial process argument in her Motion to Dismiss; the Court rejected Nurse Singletary's argument; and at this stage of the proceedings, dismissal of Harris's claims would effectively be a dismissal with prejudice because the statute of limitations has expired. The Court grants Harris's Motion only to the extent that it will consider these assertions as part of his Response to Nurse Singletary's Motion for Summary Judgment.

The PLRA requires courts to dismiss a case at any time if the court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915A(b)(1), (2). When a complaint form requires a plaintiff to list his litigation history, and the plaintiff makes affirmative misrepresentations regarding his litigation history under penalty of perjury, those misrepresentations constitute an abuse of the judicial process warranting dismissal of the case as "malicious." 28 U.S.C. § 1915A(b)(1); <u>Jenkins v. Hutcheson</u>, 708 F. App'x 647, 648–49 (11th Cir. 2018) (per curiam); <u>Rivera v. Allin</u>, 144 F.3d 719, 731 (11th Cir. 1998) (holding that dismissal of an action without prejudice as a sanction for a pro se prisoner's failure to disclose the existence of a prior lawsuit, where that prisoner was under penalty of perjury, was proper), <u>abrogated in part on other grounds by</u> <u>Jones v. Bock</u>, 549 U.S. 199 (2007); <u>see also</u> <u>Sears v. Haas</u>, 509 F. App'x 935, 935–36 (11th Cir. 2013) (per curiam) (holding that dismissal of prisoner's case for abuse of the judicial process under 28 U.S.C. § 1915A(b)(1) was warranted where the prisoner failed to disclose cases he previously filed). "It is well settled that federal courts have the inherent power to sanction parties, but the court must make a finding of bad faith on the part of the litigant before imposing such sanctions." <u>Harris v. Warden</u>, 498 F. App'x 962, 964 (11th Cir. 2012).

25

Here, the Court declines to dismiss Harris's Complaint as a sanction for abuse of the judicial process. Of the seven federal district court cases that Harris failed to disclose, four are habeas cases[14] which the civil rights complaint form does not require plaintiffs to list. See Complaint at 32 (asking plaintiff if he has filed "other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment"). Of the undisclosed civil rights cases that Harris initiated in federal district court, none were dismissed as frivolous.[15] This Court transferred one of the actions to the Northern District of Florida, where the assigned judge dismissed it on defendant's motion[16]; Harris voluntarily dismissed the other action. While Harris failed to disclose a 2014 appeal (Case No. 14-15520 (11th Cir.)) that the Eleventh Circuit dismissed as frivolous, without more, the Court declines to find Harris omitted the case in bad faith and abused the judicial process.[17] As such, Nurse Singletary's Motion is due to be denied as to this issue.

---

[14] Case Nos. 8:2015-cv-00710 (M.D. Fla.); 8:2015-cv-02088 (M.D. Fla.); 4:2016-cv-00702 (N.D. Fla.); 8:2016-cv-03199 (M.D. Fla.).

[15] Case Nos. 3:2013-cv-00623 (M.D. Fla.); 5:2013-cv-00203 (N.D. Fla.); 5:2013-cv-00372 (N.D. Fla.).

[16] Nurse Singletary counts the above-mentioned case as two separate cases.

[17] Nurse Singletary also lists a myriad of Florida state court cases that Harris failed to disclose, but she does not detail the subject or outcome of these cases. As such, the Court declines to find Harris abused the judicial process based on his failure to disclose these cases.

### B. FDOC Motion

### 1. Eighth Amendment Claim

Harris contends the FDOC Defendants violated his Eighth Amendment right against cruel and unusual punishment when they beat and sexually assaulted him on January 7, 2020. The FDOC Defendants argue that they are entitled to summary judgment as to Harris's Eighth Amendment claim against them. In support of their position, the FDOC Defendants submitted exhibits, including their declarations, Doc. 69-1 at 2–7; Harris's medical records, id. at 8–17; and housing records, id. at 18–27.

In his declaration, Sergeant Allen states:

> Regarding Plaintiff's allegations that I, along with Defendant Brewington, beat him and sexually abused him on January 7, 2020—this is not true.
>
> I do not recall any specific interaction with Plaintiff on this day, and review of available records does not indicate that a use of force occurred with Plaintiff on this date.
>
> Although I do not remember any specific interaction with Plaintiff, I would never unlawfully beat an inmate or sexually abuse an inmate.
>
> Furthermore, if I ever witnessed another employee take such action, I would have reported it to my supervisor and cooperated with any resulting investigation that arose from it.

27

Doc. 69-1 at 3–4 (enumeration omitted). Sergeant Brewington repeats these assertions in his declaration. Id. at 6–7.

As discussed above, the medical records reflect that on January 6, 2020, at 9:45 a.m., medical assessed Harris for injuries from "alleged staff abuse" that occurred on January 5, 2020, between 9:00 a.m. and 10:00 a.m. Doc. 69-1 at 12. Nurse L. Hankerson identified "superficial scratches" on Harris's right upper arm, as well as a "red area to right side of cheek [that] appears to be a pimple thats [sic] been squeezed." Id. On January 8, 2020, Harris refused a medical assessment for injuries sustained during "alleged staff abuse" that occurred on January 7, 2020. Id. at 11. Medical personnel saw Harris "cell front" and did not note any injuries. Id.

On January 15, 2020, at 4:00 a.m., Harris again "refused to be seen for allegations on staff abuse," and "0 injuries were visible cellfront while obtaining refusal." Id. at 9–10. Harris subsequently refused medical and mental health services on January 22, 2020, January 29, 2020, and January 31, 2020. Id. at 13, 15–16. The FDOC Defendants also submitted housing records that they allege demonstrate Harris did not leave his cell on January 7, 2020. FDOC Response at 4; see also Doc. 69-1 at 18–27.

Harris responds that the FDOC Defendants are not entitled to summary judgment. See FDOC Response at 9–17. In support of his contentions, he once

again provides his own declaration, Doc. 82 at 14–15; as well as an OIG
Investigative Activity Report, id. at 10–11; a January 13, 2020 grievance, id.
at 12; and a page of his medical records, id. at 16–17.

In his declaration, Harris states:

> Pursuant to 28 U.S.C. § 1746, under penalty of
> perjury, I Luis M. Harris, hereby incorporate the
> details of my sworn Complaint (doc. 1 at 13–15) and
> my original prison grievance (Exh.-"A", attached here
> above), to substantiate that Defendants Allen and
> Brewington did knowingly with malicious intent
> willfully battered [sic] and sexually assaulted [sic] me
> on January 07, 2020 in the Classification hallway at
> FSP/WU, and that, this was done in retaliation on
> behalf of Defendant Singletary. . . .
>
> Further, I declare and certify that all the facts
> stated here and within my Complaint (doc. 1) and
> Grievance (Exh.-"A"), are true and correct.

Id. at 15. The page from his medical records show that Harris returned to
Florida State Prison from the Reception and Medical Center on January 7,
2020, and he was released to security at 8:45 p.m. that same day. Id. at 17.

The OIG Investigative Activity Report states in pertinent part:

> On January 30, 2020, Inspector Donaldson was
> escorted by prison officials and officers to Inmate Luis
> Munuzuri-Harris DC# V09696 confinement cell.
> Inmate Munuzuri-Harris was asked to comply with
> strip search procedures. Inmate Munuzuri-Harris
> attempted to hide something inside his prison uniform
> pants while getting dressed. Inmate Munuzuri-Harris
> was asked to comply with strip search procedures

again this time he refused to comply. The correctional staff that witnessed the event and signed the interview refusal form attached to this case in the IGIIS electronic case file.

Inspector Donaldson researched the allegation made by Inmate Munuzuri-Harris on January 13, 2020, on the inmate appeal form. Inmate Munuzuri-Harris alleged the incident happened on January 7, 2020, yet did not make the allegation until January 13, 2020. Inmate Munuzuri-Harris made numerous non-PREA allegations during the time frame of the seven days from the alleged event date to the time he made the allegation. Inmate Munuzuri-Harris indicated in his appeals he saw numerous prison officials from FDC command staff to include Regional Director John Palmer, classification staff, medical staff, and yet never expressed this PREA allegation.

Inspector Donaldson determined there are no video cameras outside and inside the classification hallway to review. Medical records were not reviewed due to Inmate Munuzuri-Harris refusing a medical exam to which he stated he refused the exam on his appeal form. No witnesses were named in Inmate Munuzuri-Harris allegation. No subjects were named or described other than a white male officer and black male officer. Based on the complaints made by Inmate Munuzuri-Harris they all state he is requesting to be transferred away from FSP. Inmate Munuzuri-Harris is currently serving a life sentence.

Although there is insufficient evidence to establish probable cause to believe that a crime occurred, there is insufficient evidence to cite that the crime did not occur. Therefore, this investigation will be termed suspended until such time as new evidence or leads become available. This investigative report along with

a complete case file will be forwarded to the OIG records custodian.

Id. at 11. The January 13, 2020 grievance repeats the allegations regarding the FDOC Defendants' alleged assault detailed in the Complaint. Id. at 12.

The FDOC Defendants' Motion is due to be denied. At a minimum, the record before the Court reflects genuine issues of material fact as to whether the FDOC Defendants assaulted Harris on January 7, 2020. The FDOC Defendants deny assaulting Harris and do not recall any specific interaction with him on that day. They also assert that Harris never left his cell on January 7, 2020. In contrast, Harris states the assault did occur. Harris also presents evidence suggesting that he left his cell on January 7, 2020. Notably, the housing records that the FDOC Defendants attach to their Motion appear to show that Harris changed cells that day. Doc. 69-1 at 27.

The FDOC Defendants also argue that they are entitled to summary judgment because Harris "has failed to provide any documentation to support his alleged injuries," and because the medical records do not reflect any observable injuries. FDOC Motion at 7. The United States Supreme Court has acknowledged that the extent of the injury is a factor that may provide some evidence of the amount of force applied and whether the use of force was necessary under the specified circumstances. See Wilkins, 559 U.S. 34 at

31

37–38. However, a court ultimately should decide an excessive force claim based on the nature of the force used rather than the extent of the injury. Id. at 38. And, while the medical records indeed reflect that personnel did not note Harris had injuries on January 8, 2020, and January 15, 2020, Harris maintains that he sustained bruising to his neck and torso, as well as bleeding from his nose, mouth, and rectum. See FDOC Response at 15; Complaint at 6. A reasonable jury could believe that Harris sustained more injuries than medical personnel observed, especially where they merely observed him cell front. In sum, the parties offer significantly different accounts of the January 7th assault. On this record, the Court finds that there remain genuine issues of material fact with respect to Harris's Eighth Amendment claim against the FDOC Defendants. Therefore, the FDOC Motion is due to be denied on this basis.[18]

## 2. De Minimis Injury

Next, the FDOC Defendants argue that Harris is not entitled to compensatory damages under 42 U.S.C. § 1997e(e) because he cannot demonstrate that he suffered more than de minimis physical injuries resulting

---

[18] The Court notes that Harris also raises a First Amendment retaliation claim against the FDOC Defendants, which they failed to challenge in their Motion. As such, both retaliation and excessive force claims remain against the FDOC Defendants.

from the FDOC Defendants' actions. <u>See</u> FDOC Motion at 8–11. Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert a physical injury that is more than <u>de</u> <u>minimis</u>. <u>Brooks v. Warden</u>, 800 F.3d 1295, 1307 (11th Cir. 2015). Alternatively, a prisoner may bring an action for mental or emotional injury with a prior showing of the commission of a "sexual act" as denied in § 2246. Section 2246(2)(D) defines a "sexual act" to include "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . ."

Taking Harris's allegations as true, he asserts that Sergeant Allen inserted a "mini-mag flashlight" into his rectum, while "racial comments and comments about [Harris's] criminal case were being made." Complaint at 14. As such, Harris pleads and presents evidence—his declaration—of the commission of a sexual act, and as such, he may be able to recover compensatory damages for mental or emotional injury regardless of whether he sustained other physical injuries.

33

Moreover, taking Harris's sworn statements as true, as the Court must, his alleged injuries are greater than <u>de</u> <u>minimis</u>. He states that he suffered multiple contusions on his head; bleeding from his nose, mouth, and rectum; abrasions and bruises on his neck; and hematomas and bruises on his torso. <u>Id.</u> at 6. The medical records supplied by the FDOC Defendants do not directly refute these allegations. <u>See</u> Doc. 69-1 at 8–17. But even if they did, there would be disputed issues for trial. Thus, the FDOC Motion is due to be denied to the extent that the Court finds Harris's request for compensatory damages is not precluded under § 1997e(e).

### 3. Punitive Damages

The FDOC Defendants argue that Harris's request for punitive damages must be dismissed because it is statutorily barred. FDOC Motion at 11–18. According to the FDOC Defendants, 18 U.S.C. § 3626(a)(1)(A) precludes punitive damages in all civil rights cases because such damages constitute "prospective relief." <u>Id.</u> at 11. In support of their contention, the FDOC Defendants argue punitive damages "are never necessary to correct a violation of a federal right." <u>Id.</u> at 12. They also contend that even if an award of punitive damages is necessary to correct such a legal violation, that award could not satisfy the PLRA's "stringent limitations" as the relief is neither "narrowly drawn" nor "the least intrusive means necessary to correct the violation of the

34

Federal right." Id. In his Response, Harris argues his request for punitive damages is not statutorily barred and is appropriate because he plausibly alleged the FDOC Defendants' conduct was willful. FDOC Response at 7.

Section 3626(a)(1)(A) provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Punitive damages are considered "prospective relief" under § 3626. See Johnson v. Breeden, 280 F.3d 1308, 1325 (11th Cir. 2002) (holding "punitive damages are prospective relief"), abrogated on other grounds by Kingsley v. Hendrickson, 576 U.S. 389, 395 (2015). Nevertheless, the FDOC Defendants' argument that punitive damages, as "prospective relief" under § 3626, are precluded in prisoner civil rights actions is misguided.

While the Court is unaware of an Eleventh Circuit case that has addressed the FDOC Defendants' specific argument here, the Court cannot disregard the Eleventh Circuit's long-standing recognition that punitive

35

damages are available in prisoner civil rights actions. Indeed, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) permits claims for punitive damages for § 1983 claims without a physical injury requirement. <u>Hoever v. Marks</u>, 993 F.3d 1353, 1364 (11th Cir. 2021). And it has held "[p]unitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." <u>Barnett v. MacArthur</u>, 715 F. App'x 894, 905 (11th Cir. 2017). Notably, the Eleventh Circuit Civil Pattern Jury Instructions on § 1983 damages include an instruction on awarding punitive damages. <u>See</u> Eleventh Circuit Pattern Jury Instruction, Civil Cases, Civil Rights—42 U.S.C. § 1983 Claims—Damages § 5.13.

The FDOC Defendants cite <u>Johnson</u> in support of their argument; however, <u>Johnson</u> did not hold that punitive damages were unavailable under § 3626 for § 1983 cases. Instead, in <u>Johnson</u>, the Eleventh Circuit clarified, in the context of a § 1983 civil rights case, that § 3626(a)(1)(A) merely provides the framework for awarding punitive damages. 280 F.3d at 1325. It explained "a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case . . . [and] that such awards should be imposed against no more defendants than

36

necessary to serve that deterrent function and that they are the least intrusive way of doing so." Id.

The Court also finds persuasive other district court decisions explicitly finding that § 3626(a)(1)(A) does not preclude an award of punitive damages in prisoner civil cases. See, e.g., Brown v. Semple, No. 3:16cv376, 2018 WL 4308564, at *14 (D. Conn. Sept. 10, 2018) (collecting cases); Douglas v. Byunghak Jin, No. 11-0350, 2014 WL 1117934, at *4–5 (W.D. Penn. Mar. 20, 2014) (reasoning that if Congress "intended to abolish punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms"). Thus, the Court finds that § 3626 does not preclude a request for punitive damages in this § 1983 action, and the FDOC Defendants' Motion is due to be denied on this issue.

Accordingly, it is now

**ORDERED:**

1.     Plaintiff Luis Munuzuri Harris's Motion to Take Judicial Notice (Doc. 83) is **GRANTED to the extent** provided in this Order, supra note 13.

2.     Defendant Roseanna Singletary's Motion for Summary Judgment (Doc. 57) and Defendants Calob Allen and Donta Brewington's Motion for Summary Judgment (Doc. 69) are **DENIED**.

3.     The parties must confer in good faith to discuss the issues and the possibility of settlement. **No later than July 31, 2024**, the parties must notify the Court whether they are able to reach a settlement. If the parties are unable to settle the case privately among themselves, they must notify the Court if they wish to have the case referred to a United States Magistrate Judge for a settlement conference. Otherwise, the Court will enter a case management order, set a trial date, and direct the parties to begin trial preparations.

**DONE  AND  ORDERED** at Jacksonville, Florida, this 28th day of June, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 6/13
c:     Luis Munuzuri Harris, #V09696
        Counsel of record

38